**In the Matter of Ernest BOWYER, Jr., Debtor.**

**Nancy Gargula, United States Trustee, Plaintiff,**

v.

**Dennis Miller, Richard Kuhns, and Vanguard Properties LLC, Defendants.**

**Bankruptcy No. 11–31568 HCD. Adversary No. 11–3043.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

March 4, 2013.

Ellen L. Triebold, Esq., counsel for plaintiff, Office of the United States Trustee, South Bend, IN.

Dennis Miller, pro se, Milford, IN.

Richard Kuhns, pro se, Nappanee, IN.

Vanguard Properties LLC, pro se, Milford, IN.

## MEMORANDUM OF DECISION

HARRY C. DEES, JR., Bankruptcy Judge.

In this adversary proceeding, the court entered a judgment by default in favor of the plaintiff Nancy J. Gargula, United States Trustee ("plaintiff" or "U.S. Trustee"), and against the defendants Dennis Miller, Richard Kuhns, and Vanguard Properties LLC ("defendants"). *See* Fed. R.Civ.P. 55(b); Fed. R. Bankr.P. 7055. It determined that the plaintiff, in the well-pled allegations of the "Complaint to Determine Violations of 11 U.S.C. § 110 And/Or Abuse of the Bankruptcy Process, Impose Fines and Sanctions, and Obtain Injunctive Relief" ("Complaint"), presented a *prima facie* case that the defendants were bankruptcy petition preparers pursuant to 11 U.S.C. § 110(a) who had filed abusive bankruptcy cases in their operation of a "foreclosure rescue scheme." *See* R. 27, 28, 46; *see also* 11 U.S.C. § 110(a). The court then conducted an evidentiary hearing on the Complaint's request for damages, fines, sanctions, and injunctive relief. *See* Fed.R.Civ.P. 55(b)(2). After the time for submission of post-trial statements of facts and memoranda of law had passed, the court took the matter under advisement.[1] For the reasons that follow, the court grants the relief sought by the plaintiff in this adversary proceeding.

## BACKGROUND

The defendants are non-attorney bankruptcy petition preparers ("BPPs") who prepared or assisted in the preparation of the bankruptcy petitions of Ernest Bowyer, Jr. (Case No. 11–31568), Tery W Moore (Case No. 11–32896), Scott Nelson (Case No. 11–31008), Jason Brown (Case No. 11–31589), and Kyle Brendon Pestow (Case No. 11–31590). The U.S. Trustee commenced this adversary proceeding in the Bowyer case to obtain a permanent injunction, fines, and damages against the defendants. *See* Fed. R. Bankr.P. 7001(7). She also filed the "United States Trustee's Motion to Determine Violations of § 110 Against Richard Kuhns, Dennis Miller, and/or Vanguard Properties, LLC and Award Damages to the Debtor" ("Motion") in the reopened cases of Messrs. Moore and Nelson. Because the facts underlying each case were similar and the violations and requested relief related to the same course of conduct by the same defendants, the court held the evidentiary hearing and considered the cases together, reviewing the defendants' conduct toward each debtor.

The defendants participated throughout this adversary proceeding. Dennis Miller and Richard Kuhns each filed motions and affidavits which were identical in all respects except for the name of the defendant on each document. First, each defendant filed a "Motion for Extension of Response to Summons," asking for a 30–day extension.[2] *See* R. 6, 7. Since each

---

1. The court has jurisdiction to decide the matter before it pursuant to 28 U.S.C. § 1334 and § 157 and the Northern District of Indiana Local Rule 200.1. The court has determined that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. The Motion had two titles; the second was "Notice of Appointment of Ellen Triebold as Trustee for Case # 11–03043–hcd, See Attached Form 56." The attached Internal Revenue Service Form 56, entitled "Notice Concerning Fiduciary Relationship," stated that Ellen Triebold (counsel for the plaintiff) was a "fiduciary" and that "Richard: O–Kuhns" and "Dennis: Wayne–Miller" were acting on behalf of their estates.

Motion was submitted without a signature, the court ordered each defendant to amend the document pursuant to Federal Rule of Bankruptcy Procedure 9011(a) within seven days.[3] *See* R. 8, 9. The defendants did not amend their Motions, however, and the court ordered that they be stricken, as required by Bankruptcy Rule 9011(a). *See* R. 12, 13. No answer or other response to the Complaint was filed by the defendants.

Thereafter, the defendants did not respond to the plaintiff's Motion for Entry of Default or Motion for Default Judgment. Because the defendants failed to plead or otherwise defend, and because the plaintiff complied with all requirements of Rule 55(a) and (b), the court granted the U.S. Trustee's Motions for Entry of Default and for Default Judgment. *See* R. 17, 18, 27, 28, 46.

Five days later, the defendants each filed a "Motion to Dismiss and Notice of Lack of Jurisdiction." R. 34, 35. Each defendant, calling himself "Dennis–W:Miller" and "Richard–O:Kuhns," identified himself as "a sovereign man on dry land," and as "straw man-debtor," and each pronounced the following:

> I AM HERE IN MY PROPER CAPACITY TO DISMISS THE PRESUMPTION OF JURISDICTION, AS I AM AMONG THE LIVING AND WILL BE HANDLING MY COMMERCIAL AFFAIRS ACCORDINGLY.
>
> THIS IS AN OFFICIAL NOTICE "I AM NOT DEAD IN THE WATER."

R. 34, 35, p. 2. Each defendant also filed a "Motion for Extension of Time in Response to Summons." *See* R. 36, 37. However, there was no "motion": The document provided no allegations, sought no relief, and gave no information. Each document was comprised of the title, the signature "Dennis:Wayne–Miller" or "Richard:-Kuhns," and the words "All Rights Reserved," beneath the signature. In the lower right-hand corner was a 4–cent stamp, with scribbling over it, and again the phrase "All Rights Reserved." *See id.* The court, in a detailed decision, denied the Motions to dismiss and to extend as frivolous.[4] R. 40, p. 6.

Before the hearing on damages the defendants filed identical documents entitled "Affidavit of Status." R. 51, 52. Each defendant identified himself as "a creation of God and born/domiciled in one of the several States," who was "a living, breathing, sentient being on the land, a Natural Person." *Id.*, p. 1. Each defendant then asserted:

> ... Affiant cannot be compelled, manipulated, extorted, tricked, threatened, placed under duress, or coerced, ... nor can Affiant be deprived of any of these Rights, privileges, and immunities, ex-

---

**3.** Bankruptcy Rule 9011(a), provides, in pertinent part:

> Every petition, pleading, written motion, and other paper ... shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

Fed. R. Bankr.P. 9011(a).

**4.** In its Decision and Order, the court concluded:

> The court finds that both the Motions to Dismiss and the Motions for Extension of Time are documents that have wasted the court's and the plaintiff's time and resources. They contained neither factual nor legal backing. If further inappropriate filings are made, and if they are found to cause unnecessary delay, or to be filed in bad faith, the court will consider whether the defendants should be sanctioned.

R. 40, p. 6.

cept by lawful process in accordance with said Constitution, without that Natural and/or Artificial Person, in whatever capacity, in so doing, causing injury to your Affiant and thereby committing numerous crimes, requiring lawful punishment therefrom.

Further, Affiant sayeth naught.

*Id.,* p. 2. The affidavits were not filed in support of a pleading or other document; nor did they respond to any arguments made by the plaintiff. They were included in the record, but no action was taken on them.

At the evidentiary hearing, the defendant Dennis Miller asked the Judge, "Are we on the record?" When the Judge replied "Yes," the two defendants then sat in the courtroom, at counsel table, without expression or movement. When the Judge addressed them, asking if they objected to the admission of any document proffered by plaintiff's counsel, they did not answer. As a result, all of the plaintiff's exhibits were admitted without objection. However, when the Judge asked whether they wished to question or cross-examine a witness, one of the defendants answered "no."

After the plaintiff rested, the defendants stated that they had no witnesses or evidence to present, but asked that the case be dismissed because the plaintiff's counsel "used false grammar." Richard Kuhns stated that plaintiff's counsel did not use proper sentence structure. Because she used fabricated words, grammar, and procedure with no meaning, he said, she was guilty of false and misleading information under "15–1692." [5] When the court asked for examples, Richard Kuhns said, "Does 'to' + 'too' = 'for'?" and "Does 'too' + 'two' = 'fore'?" (He spelled out the variations on "2" and "4" as he spoke.) Plaintiff's counsel objected to the request for dismissal, pointing out that default judgments already had been entered against the defendants. She further argued that the plaintiff had given full and proper evidence, at this hearing, to demonstrate that her request for damages, fines, and injunctive relief was warranted, without any objections to that evidence from the defendants. With no further response from the defendants, the court found that it did not recognize the defendants' arguments as valid grounds for dismissal and that the documents submitted to the court were accurate, authentic, and admitted without objection. It therefore denied the motion for dismissal.

In closing, counsel for the U.S. Trustee summarized the requests for damages, fines, sanctions, and injunctive relief in the adversary proceeding of Mr. Bowyer and for damages in the other two bankruptcy cases of Mr. Nelson and Mr. Moore. The defendant Dennis Miller then reiterated his argument of incorrect sentence structure and stated that he had no substantive closing statement. Richard Kuhns stood on his previous statement, arguing only that the plaintiff and her counsel had a duty to communicate correctly. He accused them of false and misleading information under 15 U.S.C. § 1692e and of a disability under 29 U.S.C. § 701. [6] The

---

**5.** The defendant confirmed that 15 U.S.C. § 1692e, the statute providing the types of conduct which depict false or misleading representations by a debt collector, was the statute upon which he relied. It appears that he was accusing counsel for the U.S. Trustee of being a debt collector who used false, deceptive, or misleading representations. The absurdity of such a charge need not be discussed further.

**6.** Section 701 of Chapter 16, "Vocational Rehabilitation and other Rehabilitation Services," is the introductory general provision of the popularly known Rehabilitation Act of 1973. *See* 29 U.S.C. § 701. It is not relevant in these bankruptcy proceedings, and the de-

court then allowed the parties to submit statements of fact, memoranda of law, and replies if necessary, and announced that it would take the matter under advisement thereafter. The U.S. Trustee filed a timely Post–Trial Statement of Facts and Memorandum of Law. *See* R. 68. The court extended the deadline for all parties, but the defendants did not take the opportunity to advise the court further on their positions after the hearing.

It is clear to the court that the defendants' documents filed in this adversary proceeding, as well as the arguments raised at the evidentiary hearing, were obstreperous and were brought solely to impede the course of these judicial proceedings. Nevertheless, the defendants did not contest the allegations of the plaintiff's Complaint, her Motions for entry of default and for default judgment, and the testimony and evidence presented at the evidentiary hearing. Based on those unchallenged facts, therefore, the court makes the following findings of fact concerning the defendants' conduct and relationship with each debtor.

*Ernest Bowyer, Jr. (Case No. 11–31568)*

Mr. Bowyer testified at the hearing that he owned real estate on York Street in Elkhart, Indiana, which was in foreclosure and was scheduled to be sold at a sheriff's sale in April 2011. When he found a business card at his front door which stated "I Buy Houses / CASH! / Quick Sale–Fair Price! / Offer Guaranteed," his wife telephoned the number on the card. *See* Pl. Ex. 22, pp. 21–23 (transcript, Rule 2004 Exam.) The defendants answered and set up a meeting. They advised Mr. Bowyer that they would stop the sheriff's sale on his property and would discuss payment for their services later.

On April 15, 2011, Mr. Bowyer signed a Limited Power of Attorney which purported to grant authority to "Vanguard Properties/Dennis Miller" with respect to Mr. Bowyer's real estate. (Pl. Exs. 19, 22.) However, he said he never authorized the defendants to file a bankruptcy case on his behalf. Nevertheless, on April 16, 2011, the defendants filed a chapter 7 bankruptcy petition and other bankruptcy documents (including the Certification Concerning Debt Counseling, Schedules A–J, Statement of Financial Affairs, Statement of Intention, Statement of Current Monthly Income and Means–Test Calculation, and Creditors' Matrix) under case number 11–31568. Dennis Miller signed all the documents as "Ernest Bowyer Jr. / Dennis Miller POA." (Pl. Exs. 20, 21.) The documents scheduled only two assets (the debtor's residence and a car) and only one debt (the secured claim on the debtor's residence). The defendants instructed the debtor to call them when he received mail relating to a bankruptcy case, to ignore any such mail, to allow the case to be dismissed, and not to attend the Rule 2004 Examination if it was scheduled.

The court found, when granting default judgment against the defendants, that the bankruptcy documents filed on behalf of Mr. Bowyer were materially incomplete and inaccurate; were neither authorized nor signed by Mr. Bowyer; and were actually filed by the defendants at the United States Bankruptcy Court. Moreover, the debtor did not see the documents until he appeared at the U.S. Trustee's Rule 2004 Examination on June 15, 2011. The defendants also filed an Application for Waiver of the Chapter 7 Filing Fee and signed "Ernest Bowyer Jr./Dennis Miller POA," without Mr. Bowyer's signature or authorization. The debtor saw it for the first

fendant's citation to it only in closing argument at an evidentiary hearing on damages

under 11 U.S.C. § 110 was inappropriate and frivolous.

time at the Rule 2004 Examination, as well.

The court determined that the filing of the bankruptcy documents and Application for Waiver was done first to stop the sheriff's sale and then to cause the case to be dismissed for failure to pay the filing fee or to comply with the other bankruptcy requirements. The bankruptcy filing was ineffective for saving the home, however, for Mr. Bowyer's real estate was sold at a sheriff's sale on September 28, 2011. (Pl. Ex. 18.) The court found that the defendants were using the bankruptcy system to further their "foreclosure rescue scheme" by filing abusive bankruptcy petitions for the sole purpose of forestalling foreclosure, with no intention of complying with the requirements of the Bankruptcy Code. Moreover, because the defendants provided their services and filed numerous bankruptcy cases in the Northern District of Indiana, and because the defendants worked in concert with each other to shield themselves from prosecution under the Bankruptcy Code, the court found that their actions would be viewed as a whole and that judgment would be entered jointly and severally against the defendants.

The court noted that Mr. Bowyer was not represented by an attorney in his bankruptcy case. It found that neither Dennis Miller nor Richard Kuhns was an attorney, but that neither provided the debtor with a written notice stating that he was not an attorney and could not practice law or give legal advice. Moreover, the defendants prepared the bankruptcy documents and Application for Waiver for Mr. Bowyer without signing as bankruptcy petition preparers, without identifying themselves on the bankruptcy documents with a social security number or other identifying number for their corporation, and without furnishing the debtor a copy of the bankruptcy documents and Application for Waiver. In addition, the court found that the defendants offered legal advice to the debtor—to ignore the mailings, notices, and orders of the court, and to "drop" the bankruptcy case (i.e., allow it to be dismissed). The court further determined, from the uncontested allegations in the Complaint, that in Mr. Bowyer's bankruptcy case the defendants knowingly and fraudulently made false oaths and false declarations in the bankruptcy documents and Application for Waiver.

*Tery W Moore (Case No. 11–32896)*

Mr. Moore is a semi-truck driver who owns his residence in Bristol, Indiana, where he lives with his wife. He testified at the evidentiary hearing that, in 2011, their home was in foreclosure and facing a sheriff's sale. Mr. Moore, who was raised in an Amish household, learned of Richard Kuhns, an Amish man in his community, who claimed to have a program to save homes from foreclosure.

Richard Kuhns and Larry first met with Mr. Moore at a coffee shop in Nappanee, and later came to the Moores' home to explain the program they offered.[7] Richard Kuhns, Larry, Dennis Miller, and their company Vanguard Properties LLC offered the program. Richard Kuhns reminded Mr. Moore that the Scriptures provided forgiveness of debt after seven years, and told the Moores that they too could own their home debt-free by making monthly payments to the defendants for seven years. Mr. Moore and his wife were instructed to make three initial monthly payments of $1,000 and then to make monthly payments of $800 for seven years.

---

7. The U.S. Trustee did not discover Larry's last name. He was not named as a defendant.

If the program did not work, the Moores were promised that they would get a refund of all but the initial $1,000 payments. It was a multi-step program, Richard Kuhns said, requiring the filing of various documents to stop the sheriff's sale and to challenge the mortgage. Mr. Moore testified that he trusted and believed in this Amish man and his partners. For that reason, he and his wife made the first five payments under the plan totaling $4,600. (Pl. Ex. 5.)

A few days before the sheriff's sale was scheduled, on July 22, 2011, Dennis Miller and Larry drove Mr. Moore to the public library in downtown South Bend, Indiana. Using the library's computer, they asked him questions and filled in the bankruptcy forms. However, Dennis Miller and Larry did not fill in the forms accurately or completely. For example, Schedule B was supposed to list Mr. Moore's personal property. Dennis Miller checked off the box for "NONE" in every category of personal property, even though Mr. Moore testified that he had a 1990 Dodge Pickup, clothes, a recliner, and an interest in his corporate trucking business. *See* Pl. Exs. 1, 23. He explained that he and his wife had formed a corporation named TCM Specialized, LLC, but it was not listed on the forms. The defendants also did not list their own names, addresses, social security numbers, or the business number for Vanguard Properties LLC as bankruptcy petition preparers in the bankruptcy documents. *See* Pl. Exs. 1, 2. In addition, they did not disclose the compensation they received. Mr. Moore testified that they told him they were not attorneys, but did not give Mr. Moore a written notice explaining that they were

not attorneys and that they could not give legal advice.

Mr. Moore, Dennis Miller, and Larry went from the library to the Bankruptcy Clerk's Office and filed Mr. Moore's bankruptcy case, including an Application to Waive the Filing Fee. *See* Pl. Exs. 1, 2. The defendants told Mr. Moore that "what he needed" was a chapter 7 bankruptcy. He testified that he did not want to file bankruptcy. However, they told him not to worry, because he wasn't really filing bankruptcy: It was a "false" bankruptcy case, they said, and he did not need to show up for any of the hearings.[8] They explained that it was just meant to stop the sheriff's sale. They advised him that he could file up to three bankruptcy cases before the Judge "frowned on it." Mr. Moore testified that he relied on the defendants' representations. The defendants also provided Mr. Moore the documents relating to his real estate to file in the Elkhart County Recorder's Office. *See* Pl. Exs. 3, 4. Mr. Moore commented that he did not prepare them and that his name "Tery" was misspelled "Terry" on the Notice of Lis Pendens. *See* Pl. Ex. 4.

Mr. Moore testified that, after making five months of payments totaling $4,600, he and his wife stopped making payments under the defendants' program. At some point, he said, God heard their prayers. Mr. Moore called the mortgage company and negotiated a reduced payoff amount. With the help of his father-in-law and by God's grace, he told the court, he and his wife paid off the mortgage. When Mr. Moore asked the defendants to refund the payments made to them, however, he never received one.

---

**8.** In his Affidavit, Mr. Moore stated that the defendants advised him that they could help him file "a 'blank bankruptcy' case to stop the foreclosure of my home, that filing a 'blank bankruptcy' case was legal, and that I should not show up for the court date so that it would be dismissed." Pl. Ex. 6, ¶ 9.

After Mr. Moore received a letter from the U.S. Trustee, he called Dennis Miller to find out what to do. Dennis Miller told him that he would prefer that Mr. Moore not contact the U.S. Trustee about their dealings. However, Mr. Moore did contact the U.S. Trustee. Despite everything, his bankruptcy case was dismissed in September 2011 for failure to pay the filing fee. He agreed to tell the court about his dealings with the defendants, however, and he drove his semi-trailer truck 1,500 miles from Texas to be in the courtroom, spending $1,098.47 on fuel and forgoing sleep and the opportunity to haul a load back and earn money, so that he could testify at the evidentiary hearing. *See* Pl. Ex. 35. He stated that he was not physically harmed by the defendants but that they took advantage of him, causing him to suffer stress. He was very disappointed that another Amish man would do such a disgusting thing. The court found Mr. Moore to be an honest, credible, and sincere witness and found it noteworthy that the defendants did not question or cross-examine him.

*Scott Nelson (Case No. 11–31008)*

Mr. Nelson testified at the hearing that in February 2012, when he was living in Noblesville, Indiana, he filed a bankruptcy case in the Southern District of Indiana, with the help of an attorney named Penny Carey. That attorney told him that his credit report reflected a bankruptcy case that had been filed in his name in the Northern District of Indiana on March 24, 2011. *See* Pl. Exs. 9, 10, 16. However, it listed a social security number that was not his. Mr. Nelson said that he was unaware of that case and was shocked and surprised to learn of it.

He explained that he had owned a home on East 16th Street in Mishawaka, Indiana, in March 2011, that he was rent-ing it, and that its mortgage was in foreclosure then. In a phone call, Richard Kuhns and Dennis Miller told Mr. Nelson that they would purchase the real estate from him and would continue to rent it to the current tenant. Mr. Nelson, who was living in Indianapolis at the time, met Richard Kuhns at a coffee shop in Nappanee and signed the paperwork that Richard Kuhns presented to him. Mr. Nelson drove from Indianapolis for that meeting, incurring expenses of $80. Richard Kuhns and Dennis Miller told him that they would take care of everything once Mr. Nelson signed over a power of attorney to Richard Kuhns. *See* Pl. Ex. 11. He signed the document, based on their promises to help him, but he did not prepare it. That document purported to give Richard Kuhns his power of attorney "for the purpose of closing, insurance, mortgage payments, taxes or any other matter not herein specified" pertaining to the Mishawaka property. That power of attorney was dated March 30, 2011, six days after his bankruptcy case had been filed. He believed that the power of attorney gave the defendants the authority to obtain the right paperwork, to purchase his house, and to rent it to the current tenant. He did not believe that it gave them the authority to file a bankruptcy case in his name. According to Mr. Nelson, the only time the topic of bankruptcy was discussed was when Mr. Nelson told the defendants that he probably would file a bankruptcy case in the future.

The bankruptcy documents filed in this court, in the Northern District of Indiana, were signed "Scott Nelson/Richard Kuhns POA." Pl. Exs. 9, 10. The plaintiff determined, from the court's PACER record, that the petition filed for Mr. Nelson listed the same social security number as the one listed in Richard Kuhns' bankruptcy case,

which was filed March 27, 2012.[9] *See* Pl. Ex. 33. Mr. Nelson testified that he did not sign the documents filed in the Northern District of Indiana. He pointed out that the defendants' names, addresses, and social security numbers, and Vanguard Properties LLC's ITIN number were not disclosed as petition preparers. It was clear, as well, that the documents were incomplete and inadequate. *See* Pl. Exs. 9, 10, 23.

Mr. Nelson also met with Dennis Miller in the spring of 2011 at the St. Joseph County courthouse to sign more papers to stop the sheriff's sale on his property. Mr. Nelson again drove from Indianapolis, incurring expenses of $80 for the trip, to file a quit claim deed and two notices of Lis Pendens in the courthouse. He understood that the documents deeded the property to Richard Kuhns, Dennis Miller, and Vanguard Properties LLC. *See* Pl. Exs. 12, 13, 14. However, they did not give him copies of the documents filed, and they never told him that they had filed a bankruptcy case in his name. In the end, Mr. Nelson's bankruptcy case was dismissed on May 4, 2011, for failure to pay the filing fee. On July 21, 2011, the real estate was sold at a sheriff's sale. *See* Pl. Ex. 15.

Mr. Nelson traveled from Indianapolis to attend the hearing, at an expense of $70. He testified that, when he looks for a job, having two bankruptcy cases on his record is difficult to explain. He also said that he did not want to file one bankruptcy case, but he is further harmed by having a record of two cases.

The court found Mr. Nelson extremely credible. The defendants asked him no questions and did not challenge any of his testimony or exhibits.

*Dianne Froehlke, Analyst*

The final witness to testify on behalf of the U.S. Trustee was not a debtor. Dianne Froehlke is the Senior Bankruptcy Analyst for the South Bend office of the U.S. Trustee. Among her duties at the U.S. Trustee's office is the reviewing of bankruptcy petitions for completeness and accuracy. After testifying concerning her education and professional background, she was qualified as an expert witness in analyzing financial information and bankruptcy documents under Federal Rule of Evidence 702.

Ms. Froehlke reviewed the bankruptcy documents of Ernest Bowyer, Jr., Tery Moore, and Scott Nelson, the debtors herein, and determined that their petitions and schedules were incomplete and inaccurate. She also reviewed the bankruptcy cases of two other individuals for whom the defendants were bankruptcy petition preparers—Jason Brown (Case No. 11–31589) and Kyle Brendon Pestow (Case No. 11–31590).

Ms. Froehlke stated that Jason Brown's petition and bankruptcy documents were signed "Jason Brown/Dennis Miller POA," *See* Pl. Exs. 26, 27. The defendants' names, addresses, social security numbers and ITIN number for Vanguard Properties LLC were not disclosed as bankruptcy petition preparers. In her review, she found that the documents were incomplete and contained inaccuracies and inconsistencies. According to the docket, the case was dismissed on August 3, 2011. The real estate listed in the Jason Brown schedules was sold at a sheriff's sale in October 2011. *See* Pl. Ex. 28.

---

9. PACER is an acronym which stands for Public Access to Court Electronic Records. It is a public database provided by the United States Judiciary. It "is designed to make official case and docket information from the federal courts available to the public electronically." *In re Sterling Rubber Prods. Co.,* 316 B.R. 485, 493 n. 3 (Bankr.S.D.Ohio 2004).

The analyst told the court that Kyle Brendon Pestow had testified, in his Rule 2004 Examination, that the defendants acted as petition preparers when they assisted him in completing and filing his petition and bankruptcy documents. *See* Pl. Ex. 32, pp. 19–20. However, the defendants did not list their names, addresses, social security numbers and ITIN number (for Vanguard Properties LLC) as petition preparers in the bankruptcy documents. *See* Pl. Exs. 29, 30. Ms. Froehlke stated that the documents were incomplete and inadequate; according to the record, the case was dismissed on September 15, 2011. The real estate listed in Mr. Pestow's bankruptcy schedules was sold thereafter at a sheriff's sale. *See* Pl. Ex. 31.

The final case Ms. Froehlke discussed was the chapter 7 bankruptcy of the defendant Richard Kuhns. She described the filing as a "skeleton" bankruptcy petition filed on March 27, 2012. The bankruptcy documents included only the petition, Exhibit D, the Creditors' Matrix, and an Application for Waiver of the Chapter 7 Filing Fee. *See* Pl. Exs. 33, 34. Richard Kuhns listed the same social security number in his case as the number listed in Mr. Nelson's case. On his Exhibit D he wrote: "I was not able to obtain credit counseling services before filing as Sheriff Sale is scheuled [*sic*] for Mar 27 2012. One day." Pl. Ex. 33, Ex. D. According to PACER, Ms. Froehlke testified, no schedules or statements were filed in this case and it was dismissed for failure to file the required documents.

Ms. Froehlke prepared a Summary of Cases and Deficiencies in which she reviewed the five cases before the court (the bankruptcies of Messrs. Bowyer, Nelson, Pestow, Moore, and Brown) and listed the specific deficiencies found in their bankruptcy documents. *See* Pl. Ex. 23. She found 17 mistakes or inadequacies in Mr. Bowyer's documents; 14 in Mr. Nelson's; 11 in Mr. Pestow's; 11 in Mr. Moore's; and 15 in Mr. Brown's. She testified that this lack of accurate and complete information in bankruptcy cases harms all the participants in the bankruptcy system, as well as the bankruptcy system itself. For the debtors, a bankruptcy case decreases a person's credit score and stays on a person's credit report for ten years. A lower credit score because of a bankruptcy filing can adversely affect that person's ability to obtain credit, insurance, and employment. She explained that creditors can be harmed, as well. The lack of disclosure and misleading information in the bankruptcy documents hinders creditors in determining what course of action to take. The bankruptcy clerk, the court itself, and the U.S. Trustee Program are also harmed, for they must administer cases that were filed with no intention of being completed. Ms. Froehlke testified that the bankruptcy system relies on full disclosure; the system does not work if the information filed is unreliable. These cases demonstrated that the system can be harmed and stymied by the lack of full disclosure.

Ms. Froehlke proffered the web pages she printed of the defendants' advertisement for "foreclosure relief."[10] *See* Pl.

---

**10.** The multi-page advertisement begins thus:
**AMERICA IS FACING A FORECLOSURE EPIDEMIC!**
Once upon a time, you could handle your mortgage payments. But then ... Life happened! Or, maybe your payments adjusted way up. Somewhere along the way, you found yourself suddenly and deeply in be-

tween a rock and a hard place, from where you can only pay a portion of the mortgage. Perhaps it began with a divorce or something unforeseeable such as an injury on the job.
There is no rest for the weary, as they say, and the banks demand that you keep up, regardless of the situation. Sadly, it is all

Ex. 24 (http://freeforeclosureoptions.webs.com/). She explained that the web pages are on the internet to attract people facing the loss of their homes. They are available to the public, and they contain the contact information for Dennis and Richard. The phone number listed for Richard is the same as the one on his bankruptcy petition. *See* Pl. Exs. 24, 33. The phone number for Dennis is the same as the number listed in Mr. Brown's petition. *See* Pl. Exs. 24, 26. In Ms. Froehlke's expert opinion, the web pages target individuals in financial distress.[11]

Finally, Ms. Froehlke proffered a document itemizing the statutory fines requested by the U.S. Trustee for the defendants' violations of § 110, as calculated under § 110(*l*)(1) and *(l)(2)(C)*. She explained the calculations by which she arrived at total statutory fines of $81,000. She also stated that, even though the U.S. Trustee believed she was entitled to fines in all the cases before the court, the fines were being requested only in the adversary proceeding commenced in Mr. Bowyer's case. In her view, an $81,000 fine was sufficient

to demonstrate the seriousness of the defendants' violations. Based on her expertise, she testified that the defendants' filing of these cases caused the bankruptcy system to be unreliable for the bankruptcy court, U.S. Trustee, creditors, and debtors in this and other cases. Her office could not act on cases like these, she stated; it could not analyze the missing information, and such cases caused the system to fail. When the Bankruptcy Code and Rules were disregarded, the process was harmed and the court was faced with administering cases that were never intended to be completed and closed.

## DISCUSSION

This adversary proceeding was brought under 11 U.S.C. § 110, the statute which assesses penalties for persons who negligently or fraudulently prepare bankruptcy petitions. It defines a "bankruptcy petition preparer" ("BPP") as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." [12]

or nothing with the banks—partial payments just will not do. **If you are reading this message you are taking smart steps toward resolving this issue.** I am sure you understand that not taking action at this point would be catastrophic to your financial life.
Time is running out. You have made every effort and have not been successful in working out a solution to stop the pending foreclosure.
**What you need now is our experience in your corner.** For a long time now, we have been helping families like yours get back on track with their mortgages.
Our goal is to slow this foreclosure epidemic by helping one family at a time. We are dedicated to helping the people of our community. [asks for reader to submit name, email address, etc., here] . . . .
IMPORTANT DISCLOSURE
VANGUARD PROPERTIES IS NOT ASSOCIATED WITH THE GOVERNMENT, AND

OUR SERVICE IS NOT APPROVED BY THE GOVERNMENT OR YOUR LENDER. NOR DO WE NEED TO BE.
EVEN IF YOU ACCEPT THIS OFFER AND USE OUR SERVICE, YOUR LENDER MAY NOT AGREE TO CHANGE YOUR LOAN.
. . . .
Pl. Ex. 24, pp. 1–2.

11. The court found that the web site advertising the defendants' program for foreclosure relief was currently available on the date that this Memorandum of Decision was issued.

12. The Bankruptcy Code defines a "document for filing" as a "petition or any other document prepared for filing by a debtor in a United States bankruptcy court . . . in connection with a case under this title." § 110(a)(2). This court agrees with the majority position that "the petition, the schedules, and the various statements constitute separate documents for the purposes of § 110." *In re Jay,* 446 B.R. 227, 240 n. 15 (Bankr.E.D.Va.2010).

§ 110(a)(1). Bankruptcy courts have defined what BPPs can and cannot do:

> [I]n jurisdictions where BPPs are allowed to complete bankruptcy documents as a nonlegal service, they can sell sample legal forms, photocopy the completed forms, supply very basic information about court locations and filing fees, and "provide secretarial services to type bankruptcy forms for clients, as long as the typists do no more than copy the written information furnished by clients." ... In contrast, they cannot do the following: assist debtors in selecting information to fill out bankruptcy documents, explain the definition of legal terms, recommend which exemptions should be claimed, correct mistakes and omissions in the bankruptcy documents, contact creditors, or point the debtor to relevant sections of legal publications containing answers to their questions.

*In re Steward,* 312 B.R. 172, 175 (Bankr. N.D.Ill.2004) (citations omitted). One court succinctly stated that "bankruptcy petition preparers cannot do anything other than typing, data input, or photocopying, *period.*" *U.S. Trustee v. Assaf (In re Briones–Coroy),* 481 B.R. 685, 694 (Bankr. D.Colo.2012). Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress expanded § 110, adding new categories of mandatory and prohibited conduct for BPPs and allowing treble damages for some § 110 violations. However, there was no change to the per-violation fine imposed for violating § 110's provisions. *See In re Avery,* 2012 WL 1021348, at *1 n. 2 (Bankr.D.Colo. Mar. 20, 2012).

■ The plaintiff alleged and proved, in her Motion for Default Judgment and the exhibits filed in support of the Motion, that the defendants, working together, are "bankruptcy petition preparers" under § 110(a)(1). The court found that the defendants were not attorneys, that they prepared documents for filing, and that they sought compensation for their services. *See In re Froehlich,* 23 Fed.Appx. 572, 573, 2001 WL 1530594, at *1 (7th Cir. Nov. 26, 2001) ("Bankruptcy petition preparers are paid to prepare documents for their clients' bankruptcy filings."). At the hearing, for example, Mr. Moore testified that he paid the defendants $4,600, and Mr. Nelson testified that he transferred his real estate to the defendants for their services. In Mr. Bowyer's and Mr. Nelson's cases, the defendants filed bankruptcy documents on their behalf without telling them of the filings. *See In re Amezcua,* 2013 WL 272809, at *1 (Bankr.D.Utah Jan. 18, 2013) (assessing damages and fines in a case in which the debtor was unaware of the filing). Mr. Moore was told that he wasn't really filing bankruptcy; he was merely filing a "false" or "blank" bankruptcy to save his home.

■ The conduct of Dennis Miller and Richard Kuhns toward each debtor has been clearly described, and it comports with the definition of a BPP. The court determined in its default judgment rulings that the three defendants acted as bankruptcy petition preparers pursuant to § 110. *See* R. 27, 28, 46. In addition, the evidence presented at the evidentiary hearing clearly demonstrated that Vanguard Properties LLC was a BPP: The debtors Mr. Bowyer and Mr. Nelson signed a "limited power of attorney" allowing Vanguard (and Miller or Kuhns) to handle real estate transactions on their behalf; also, Vanguard Properties LLC was the organization named on the defendants' web site as the source of help for stopping a foreclosure. *See* Pl. Ex. 24. The Bankruptcy Code defines "person" to include corporations, and courts have deemed corporations to be BPPs. *See*

§ 101(41); *see also Frankfort Digital Servs., Ltd. v. Kistler (In re Reynoso),* 477 F.3d 1117, 1123–24 (9th Cir.2007) (affirming bankruptcy court's finding that corporation selling web-based software that prepares bankruptcy petitions qualified as a BPP); *In re Fraga,* 210 B.R. 812, 817 (9th Cir. BAP 1997) (affirming bankruptcy court's characterization of corporation as a BPP based on plain language of statute). The court determined that these defendants worked together, filing or assisting in filing numerous bankruptcy cases. It found that their actions should be viewed as a whole and that judgment should be entered jointly and severally against the defendants. The three defendants clearly are "bankruptcy petition preparers" under § 110(a), and their activities in preparing documents for filing and in receiving compensation may be considered permissible or prohibited pursuant to § 110(b)–(k).

The U.S. Trustee sought fines, damages, sanctions and injunctive relief under § 110(b)(1), (b)(2), (c), (d), (e)(1), (e)(2), *(l)(1), (l)(2),* and (i)(1)(B). The court considers her requests under each subsection.

■ Under § 110(b)(1), a BPP who prepares a document for filing must "sign the document and print on the document the preparer's name and address." § 110(b)(1); *see In re Steward,* 312 B.R. at 181. Many bankruptcy documents have a printed section labeled "Signature of Non–Attorney Bankruptcy Petition Preparer," requiring the BPP to provide his or her printed name, signed name, and address at the end of the forms. Among those documents are the bankruptcy petition, the declaration concerning the debtor's schedules, the statement of financial affairs, the statement of intention, and the application for waiver of the chapter 7 filing fee. The court finds that the defendants prepared documents for filing in Mr. Bowyer's case and left blank every BPP section. The defendants also left blank the BPP sections in the cases of Messrs. Moore, Nelson, Brown, and Pestow. The court therefore concludes that the defendants, acting as bankruptcy petition preparers, violated § 110(b)(1) in all five cases by failing to sign and print their names and addresses on bankruptcy documents.

Section 110(b)(2) requires that the BPP give written notice to the debtor that he or she "is not an attorney and may not practice law or give legal advice." § 110(b)(2); *see In re Jay,* 446 B.R. 227, 237 (Bankr. E.D.Va.2010). Notice must be provided before the BPP prepares any documents or accepts fees from a debtor. In addition, it must be written on a specific form, "Official Form 19," be signed by the debtor and the BPP, and be filed in the court with the documents prepared by the BPP. *See* § 110(b)(2)(A), (B); *see also In re Martin,* 424 B.R. 496, 508 (Bankr.D.N.M. 2010). The court finds that the defendants, acting as bankruptcy petition preparers, continually failed to comply with § 110(b)(2). The mandatory Form 19 was not attached to any document filed in the bankruptcy cases of the five debtors herein. There was no written notice, and the phrase "well, I'm not a lawyer, but …" is simply insufficient. *See In re Baugh,* 2012 WL 1570026, at *3 (Bankr.W.D.Tex. May 3, 2012) (imposing fines for § 110(b)(2) violations); *In re Hegwood,* 2009 WL 425153, at *5 (Bankr.M.D.Ga. Jan. 20, 2009) (finding that, although the debtor knew the BPP was not an attorney, he did not realize she was not able to provide legal advice).

Subsection (c) of § 110 prohibits a BPP from preparing a document for filing without placing a number on the document that identifies the individual preparer. The identifying number—the social security number of the preparer—must be placed after the BPP's signature on any document

the BPP prepares for filing. *See* § 110(c)(1), (2); *see also In re Coy,* 324 B.R. 393, 397 (Bankr.M.D.Fla.2005) (requiring social security number of individual person preparing petition as identifying number). The court finds that the defendants herein, acting as bankruptcy petition preparers, failed to comply with § 110(c): They prepared and filed documents without providing identifying numbers on any document. *See In re Randall,* 2011 WL 2678585, at *1–2 (Bankr.E.D.Wis. July 7, 2011); *In re Steward,* 312 B.R. at 181.

Section 110(d) requires a BPP to provide a debtor with a copy of each document to be filed in the case. It states: "A bankruptcy petition preparer shall, not later than the time at which a document for filing is presented for the debtor's signature, furnish to the debtor a copy of the document." When a BPP continually and intentionally engages in conduct which constitutes violations of § 110(d), he is subject to the maximum fine of $500 for each violation under § 110($l$)(1). *See In re Alloway,* 401 B.R. 43, 47 (Bankr. D.Mass.2009). The defendants herein, acting as bankruptcy petition preparers, did not give copies of the filed bankruptcy documents to any of the five debtors whose cases the court has reviewed.

Subsection (e)(1) of § 110 prohibits the BPP from executing any document on behalf of a debtor. If a BPP handles the execution of documents, he or she may be fined up to $500 for each document executed in violation of this subsection. *See In re Paysour,* 313 B.R. 109, 115–16 (Bankr. E.D.N.Y.2004) (stating that debtor's signature on a document attests to its accuracy and is made under oath; imposing fines jointly and severally on defendants for executing documents which debtor should execute). In the Bowyer and Nelson cases,

the defendants prepared and executed all the documents without obtaining the debtors' signatures. Their use of "POA" after their names did not give the defendants the power to act as the debtors' agents in executing their bankruptcy documents. *See In re Steward,* 312 B.R. at 178 (noting that "power of attorney" may allow a grantee to execute documents pertaining to grantor's property, but a BPP cannot legally execute any document on behalf of a debtor). The court determines that the defendants, acting as bankruptcy petition preparers, violated § 110(e)(1) by executing documents on behalf of the debtors.

■ Subsection (e)(2)(A) of § 110 prohibits a BPP from offering any legal advice to a potential debtor. *See, e.g., In re Reynoso,* 477 F.3d at 1125 ("Since 'bankruptcy petition preparers' are-by definition-not attorneys, they are prohibited from practicing law."). Subsection (B) offers examples of legal advice that is prohibited: such advice as whether to file a bankruptcy petition, whether to commence a case under chapter 7 or another chapter, whether debts will be discharged, whether the debtor will be able to retain his home or possessions, what the tax consequences might be, and how to understand or use bankruptcy procedures and rights. In this case, the defendants went far beyond clerical services. They advised that the debtors should file chapter 7, should ignore mailings from the court, should not attend a trustee's meetings or Rule 2004 exams, and should let the cases be dropped or dismissed. The defendants' web page on "Foreclosure Options," which advertises the name Vanguard Properties and refers to "our team" as one with "over 8 yrs of combined experience in real estate," is filled with legal-sounding advice.[13] Pl. Ex.

---

**13.** For example, the defendants' web site loosely defines the terms "short sale" and

"short payoff" and claims that "[w]e specialize in these types of transactions by re-negoti-

24, p. 3; *see also In re Bagley*, 433 B.R. 325, 333 (Bankr.D.Mont.2010) ("Advising debtors of available exemptions, and soliciting information which is then translated into completed bankruptcy forms is the unauthorized practice of law, whether by website or otherwise."). Under § 110(e)(2) it is clear that "this behavior exposes prospective debtors to serious legal consequences." *In re Hegwood*, 2009 WL 425153, at *5 (Bankr.M.D.Ga. Jan. 20, 2009). The court thus concludes that the defendants, acting as bankruptcy petition preparers, violated § 110(e)(2) by offering legal advice to the debtors.

■ Under § 110(*l*)(1), a BPP "who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure." The U.S. Trustee established (without objection by the defendants) that in Mr. Bowyer's case[14] the defendants, acting as BPPs, violated six subsections of § 110 in nine separate documents, and she calculated that the statutory fines against the defendants for such violations in this case totaled $27,000.[15] *See* Pl. Ex. 25. Pursuant to § 110(*l*)(2), the court is required to triple the total amount of the fine in each case in which the court finds that the preparer committed specific acts. *See In re Amezcua*, 2013 WL 272809, at *4 (Bankr.D.Utah Jan. 18, 2013). In Mr. Bowyer's case, the defendants failed to inform Mr. Bowyer that he was filing a bankruptcy case, and they prepared his bankruptcy documents for filing without disclosing their identity as bankruptcy petition preparers. *See* § 110(*l*)(2)(C), (D). Trebling the statutory fine of $27,000, the U.S. Trustee requested $81,000. The court finds that the fines were correctly tabulated and that the trebling of the fines is both mandatory and appropriate. *See id.* ("As harsh as the tripling of fines can often be, this is one instance where the Court feels confident that it is the proper course of action.").

ating the loan amounts...." Pl. Ex. 24, p. 5. The web site states that its goal is to protect families and their property "against the unlawful actions of banks," and its answer to the question "How does this work?" is the following explanation:

> You will use the legal forms to make claims against the bank. When the bank cannot properly respond under commercial law (they never do), an administrative judgment is issued by a third party Notary Witness and is admissible in court if the bank were to try and steal your home at some later date. Watch the video clips below for a better understanding of what we do to help. For full details about how we can help please contact us here. [Reader can click on "Contact us" bar.]

Pl. Ex. 24, p. 7.

14. Witness Froehlke testified that the U.S. Trustee believed she was entitled to fines in all the cases before the court. However, the fines were being requested only in the adversary proceeding in Mr. Bowyer's case because an $81,000 fine was sufficient to demonstrate the seriousness of the defendants' violations.

15. The U.S. Trustee sought a $500 fine in Mr. Bowyer's case for the defendants' violations of six (6) subsections of the statute: § 110(b)(1)(A) and (B), § 110(b)(2), § 110(c), § 110(d), § 110(e)(1), and § 110(e)(2). The $500 fine for six violations yields a total statutory fine of $3,000 per document. The plaintiff then listed nine (9) documents signed, executed, and filed by the bankruptcy petition preparer defendants: the chapter 7 voluntary petition; Exhibit D—Individual Debtor's Statement of Compliance with Credit Counseling Requirement; Certification concerning Debt Counseling; Declaration Concerning Debtor's Schedules; Declaration for the Statement of Financial Affairs; Statement of Intention; Chapter 7 Statement of Current Monthly Income and Means–Test Calculation; Creditors' Matrix; and Application for Waiver of the Chapter 7 Filing Fee. Therefore, for all the bankruptcy documents filed by these BPPs in violation of § 110, the total fines are $27,000.

In addition to the request for trebled fines against the defendants jointly and severally under § 110($l$)(1) and (2), the plaintiff sought statutory damages to be paid to the debtor Mr. Bowyer in the amount of $2,000 for the defendants' unfair, fraudulent, or deceptive practices, as allowed under § 110(i)(1)(B).[16] Finally, she asked for a permanent injunction against the defendants and any person or entity acting in concert with them from directly or indirectly acting as a BPP under § 110 or providing any service related to the preparation of documents to be filed in a bankruptcy case. *See* § 110(j).[17]

The court finds that the monetary sanctions, including the $2,000 statutory damages payable to debtors under

§ 110(i), are justified. *See In re Vleck,* 307 B.R. 615, 617 (Bankr.N.D.Ill.2004) (noting that § 110(i) gives debtors the opportunity to recover funds based on the same violations for which fines were imposed on the BPPs). First, the defendants repeatedly and intentionally violated the provisions of § 110 in each bankruptcy case now before this court. They committed deceptive acts, such as concealing their roles as BPPs, intentionally and repeatedly failing to disclose their identity as BPPs on the documents they filed, signing and filing false bankruptcy documents in the debtors' names, and failing to disclose the compensation paid to them. *See In re Reynoso,* 477 F.3d at 1124; *In re Amezcua,* 2013 WL 272809, at *5–6. They gave legal

**16.** Section 110(i) provides damages on behalf of the debtor:

§ 110(i)(1) If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, ... the court shall order the bankruptcy petition preparer to pay to the debtor—
(A) the debtor's actual damages;
(B) the greater of—
(i) $2,000; or
(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
(C) reasonable attorneys' fees and costs in moving for damages under this subsection.
(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.
11 U.S.C. § 110(i).

**17.** Section 110(j) provides injunctive relief:
§ 110(j)(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee ... may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

(2)(A) In an action under paragraph (1), if the court finds that
(i) a bankruptcy petition preparer has—
(I) engaged in conduct in violation of this section or of any provision of this title;
(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or
(III) engaged in any other fraudulent, unfair, or deceptive conduct; and
(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.
(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty imposed under this section, or failed to disgorge all fees ordered by the court the court may enjoin the person from acting as a bankruptcy petition preparer.
. . . .
(4) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorneys' fees and costs of the action, to be paid by the bankruptcy petition preparer. 11 U.S.C. § 110(j).

advice—such as which chapter of the Bankruptcy Code to choose for filing—which they were neither qualified nor licensed in Indiana to provide, and such conduct was fraudulent, unfair or deceptive within the meaning of § 110(i)(1). *See In re Froehlich,* 23 Fed.Appx. 572, 573, 2001 WL 1530594, at *1 (7th Cir. Nov. 26, 2001) (stating that BPPs are not licensed to practice law and may not offer legal advice); *In re Sanchez,* 446 B.R. 531, 540–41 (Bankr.D.N.M.2011) (holding that the dispensing of legal advice by a BPP is deceptive conduct under § 110(i)(1)). The court finds that the defendants, acting as bankruptcy petition preparers, engaged in a pattern of fraudulent, unfair, or deceptive practices in the bankruptcy cases they processed.

The language of the statute itself is mandatory: The BPP is required by § 110(i) to pay the debtor actual and statutory damages and attorneys' fees and costs if the court determines that the defendants have engaged in fraudulent, unfair or deceptive conduct. *See In re Hernandez,* 2011 WL 5239238, at *12 (Bankr.D.Colo. Oct. 31, 2011); *In re Rojero,* 399 B.R. 913, 920–21 (Bankr.D.N.M.2008). The court has no difficulty finding that Mr. Bowyer and the other debtors whose bankruptcy cases were filed by these defendants were injured by the defendants and deserve compensation for their losses. In four of the five cases, the debtors' real estate was sold at a sheriff's sale. In the fifth case, Mr. Moore's, the debtor was able to save his home by negotiating directly with the mortgage holder; however, he paid the defendants $4,600, relying on their promise to prevent the loss of his home. Other damages—such as the damaged credit reports and the need to explain the bankruptcy filing to potential employers—are unquantifiable additional harms. The court finds that the statutory damages shall be awarded to the debtors under § 110(i)(1)(B) in the following amounts:

Mr. Bowyer, Case No. 11–31568:   $2,000
Mr. Moore, Case No. 11–32896:   $9,200
Mr. Nelson, Case No. 11–31008:   $2,000

■] The U.S. Trustee also requested sanctions of $1,000 in the cases of Mr. Moore and Mr. Nelson, pursuant to § 110(i)(2).[18] The statute provides that the bankruptcy petition preparer *shall* be ordered to pay $1,000 plus attorneys' fees and costs whenever a trustee or creditor seeks damages under § 110(i)(1). The court therefore is required to order the defendants, as bankruptcy petition preparers, to pay $1,000 jointly and severally to the movant U.S. Trustee under that provision, and it finds the mandate appropriate. Equally appropriate is the U.S. Trustee's request that the defendants pay the court filing fees to the Clerk of the Bankruptcy Court for each and every case in which the filing fees were not paid. The defendants have abused the bankruptcy court's judicial process by filing materially inaccurate petitions and schedules and by filing applications to waive the filing fee with no intention that any payments would be made by the debtors. The court has administered the cases and has conducted hearings and trials. The court, with full authority under 11 U.S.C. § 105(a) to issue orders to prevent an abuse of the bankruptcy system, orders the defendants pay

---

**18.** The court notes that the U.S. Trustee did not move for sanctions in the case of Mr. Bowyer, and did not seek additional attorneys' fees or costs in any of the cases. She explained that the trebled fine of $81,000, combined with relief for the victimized debtors, the clerk of the bankruptcy court, and the bankruptcy system as a whole, was a sufficiently significant penalty. The court respects her position, but will nevertheless impose the mandatory § 1 10(i)(2) sanctions of $1,000 plus fees and costs in Mr. Bowyer's case as well as in the Moore and Nelson bankruptcy cases.

the filing fee of $299 to the Clerk of the United States Bankruptcy Court of the Northern District of Indiana, South Bend Division, in the bankruptcy case of Mr. Bowyer. *See In re Thueson,* 2009 WL 1076888, at *12 (Bankr.D.Ariz. Mar. 12, 2009) (concluding that the court is authorized to use its § 105(a) power to implement § 110).

The court finally considers the permanent injunctive relief against the defendants requested by the U.S. Trustee. Under § 110(j), the court may enjoin BPPs from engaging in specific conduct or may completely enjoin them from acting as BPPs. An injunction may forbid the particular conduct which violates § 110 (or another Code provision) or forbid actual fraudulent, unfair, or deceptive acts. *See* § 110(j)(2)(A). The court also may issue a permanent injunction under § 110(j)(2)(B), forbidding a person from acting as a bankruptcy petition preparer, if it finds that the person repeatedly violated § 110 or other Code provisions; continued to pursue his fraudulent, unfair, or deceptive conduct; failed to pay a § 110 penalty; or failed to pay a fee disgorged by court order. *See Bartok v. DeAngelis,* 2012 WL 664928, at *6 (D.N.J. Feb. 29, 2012). Permanent injunctive relief is appropriate when "merely enjoining the conduct would not be sufficient to prevent continued interference with the proper administration of the Bankruptcy Code." *Id.* (citing § 110(j)(2)(B)); *see also In re Martin,* 424 B.R. 496, 512 (Bankr.D.N.M.2010) (finding permanent injunction necessary to prevent injury to unsuspecting public and alleviate burden on courts).

The testimony and evidence presented in the hearing, along with the records of the five bankruptcy cases under consideration in this adversary proceeding, fully demonstrated the defendant's repeated violations of § 110 through their ongoing violative conduct. *See In re Amezcua,* 2013 WL 272809, at *1 (Bankr.D.Utah Jan. 18, 2013) ("Information was falsified, signatures were forged, and identities were concealed."). The defendants' web site is at this moment luring people to submit their contact information to the defendants because, as it states, "I am sure you understand that not taking action at this point would be catastrophic to your financial life." Pl. Ex. 24, p. 1. Mr. Moore testified that Dennis Miller told him that whatever happened in this case did not matter, because the defendants would continue to operate by changing their name, using a new identity, and moving on. The defendants, who participated throughout this adversary proceeding and were present at the hearing, did not object to any of the evidence and testimony presented by the U.S. Trustee. Consequently, the court finds that there is no factual challenge to the evidence and that the facts as presented establish the need for permanent injunctive relief.

It is clear to this court that the defendants are filing abusive bankruptcy cases in the operation of their "foreclosure rescue scheme," and they continue to abuse the bankruptcy system and to engage in unlawful activity. They have repeated their unfair, fraudulent, and deceptive conduct in connection with the preparation and filing of bankruptcy documents on behalf of unsuspecting debtors who never intended to file bankruptcy. The court finds that injunctive relief is appropriate to prevent the recurrence of the defendants' conduct and to prevent harm to other potential debtors. It determines that the actions of the defendants and their agents warrant the imposition of a permanent injunction against the preparation of bankruptcy petitions and documents in this judicial district. *See In re Briones–Coroy,* 481 B.R. 685, 741 (Bankr.D.Colo.2012)

(finding that defendant must be enjoined from acting as a bankruptcy petition preparer); *In re Steward,* 312 B.R. at 182 (granting permanent injunctive relief upon U.S. Trustee's showing of recurring violations of § 110, recurring unfair or deceptive conduct, and misconduct so persistent "that an injunction prohibiting specific conduct would be insufficient").

### CONCLUSION

The court concludes that the two individual defendants, Dennis Miller and Richard Kuhns, and the corporation Vanguard Properties LLC, acting together, were bankruptcy petition preparers under § 110(a) who violated § 110(b)(1), § 110(b)(2), § 110(c), § 110(d), § 110(e)(1), and § 110(e)(2) of the Bankruptcy Code. Their conduct constitutes multiple violations of § 110 in this case and other cases.

In this bankruptcy case of Ernest Bowyer, Jr., Case Number 11–31568 and Adversary Proceeding Number 11–3043, the court finds the defendants jointly and severally liable to the debtor Mr. Bowyer in the amount of $2,000 in statutory damages pursuant to § 110(i)(1)(B). The court finds the defendants jointly and severally liable to the plaintiff U.S. Trustee in the amount of $81,000 in fines pursuant to § 110(*l*)(1) and (2). In addition, it awards the U.S. Trustee $1,000 plus attorneys' fees and costs, if any, pursuant to § 110(i)(2). Pursuant to its broad inherent powers under § 105(a), the court also holds the defendants jointly and severally liable to the Clerk of this Bankruptcy Court in the amount of $299, which is the unpaid filing fee in this case.

The court requires these damages, fines, and sanctions to be paid within thirty (30) days of the date of this court's Decision and Judgment. The payments shall be made by certified check or money order. The defendants are required to provide proof of timely payment to the U.S. Trustee and to the Bankruptcy Court within thirty (30) days of the date of this court's Decision and Judgment.

The court also issues a permanent injunction under § 110(j)(2)(B) against the defendants, enjoining them from acting as bankruptcy petition preparers, advertising their services on the internet or elsewhere, and preparing bankruptcy documents in this Northern District of Indiana.

SO ORDERED.